### HANOVER COBB v. WILLIAM HALL.

*Statute of frauds.*

A party contracting by parol to purchase a piece of land, and paying a part of the purchase money, cannot recover it back and refuse to fulfill the contract on account of its being within the statute of frauds, if the other party is ready and willing and offers to perform on his part.

ASSUMPSIT. The declaration contained the general counts. Plea, the general issue ; trial by jury, June Term, 1856,—POLAND, J., presiding.

The plaintiff gave evidence tending to prove that one · James Drown, of Sheffield, sometime prior to May, 1855, purchased a small piece of ground in Sheffield, for the sum of fifty dollars ; that he paid thirty dollars of the same and procured the defendant to pay the remaining twenty dollars, who, upon doing so, took the deed of the premises to himself; that said Drown subsequently erected buildings on said land, and resided thereon ; that on the 13th of May, 1855, the plaintiff contracted with said James Drown to purchase said premises of him for four hundred and fifty dollars, to pay one hundred dollars down, one hundred and fifty dollars the next fall, and the balance in annual payments of one hundred dollars each, and to give his notes and a mortgage on the premises to secure them. The plaintiff testified that he objected to giving his notes and mortgage to the defendant, or to have any thing to do with him more than to take the deed from him, and that thereupon said James Drown agreed that the notes and mortgage should be given to his brother, Horace Drown. It appeared further that James Drown and the plaintiff went to St. Johnsbury, where the defendant resided, to have him deed the place, but that he said his deed was at Sheffield, and he could not then make a deed, but would come up in a week and do so. The contract was stated over to the defendant, and he was satisfied with it, and proposed to the plaintiff to pay the one hundred dollars then, as he was going to leave the place. The plaintiff objected to paying to Drown, as he was not responsible, and the defendant said he might pay to him, and he would deed, according to the contract, and thereupon a witness was called, and the

contract stated over, and the plaintiff paid the one hundred dollars to the defendant. By the contract between the plaintiff and Drown, Drown's family were to remain in a part of the house until the next fall. This arrangement was not satisfactory to the plaintiff's wife, and the plaintiff (who then lived in Lyndon,) went the next day after seeing the defendant as above stated, to Sheffield to see Drown, to make, if possible, a different arrangement in relation to the possession of the house. Drown told the plaintiff he was going away, and could not alter it, and the plaintiff testified that Drown told him he had sold out to Hall, and had no more to do with it. On the same day the defendant also went to Sheffield and procured a deed of the said premises to be made to the plaintiff, which the defendant duly executed and tendered to the plaintiff, and demanded that the plaintiff should execute his notes and a mortgage to secure them, but the plaintiff declined to receive the deed, or have anything to do with the defendant about it. The plaintiff claimed and testified that the reason why he refused to accept the deed and execute his notes and mortgage was because the defendant demanded the notes and mortgage to himself, instead of to Horace Drown, as he was to execute them by the contract. The plaintiff proved a demand of the money before suit brought, and a refusal by the defendant to repay the same to him.

The defendant gave evidence tending to prove that there was no agreement by James Drown with the plaintiff that the mortgage and notes should be given to Horace Drown. He also testified that he made no purchase of the place of James Drown, but that immediately after the plaintiff paid him the one hundred dollars he paid the same to James Drown, except what was coming to him, and that, as Drown was going away, it was arranged that the defendant was to receive the remainder of the purchase money from the plaintiff, and pay it over to some of said Drown's daughters, who had furnished him money with which to erect said house. The defendant also testified that when he tendered the deed to the plaintiff and learned that the plaintiff objected to giving the notes and mortgage to him, that he consented, and told the plaintiff that he might execute them to Horace Drown. The defendant also gave evidence tending to prove that the reason why the plaintiff did not go on with the contract of purchase was not

because the defendant claimed to have the notes and mortgage given to him, but because the plaintiff's wife was dissatisfied with the trade, and that the plaintiff designed to put an end to the trade before any question arose as to the person to whom said notes and mortgage should be executed. The defendant produced upon the trial the deed tendered by him to the plaintiff, and again tendered it. There was no writing whatever in relation to the contract of purchase, but the same was wholly in parol, and it was conceded that the one hundred dollars paid to the defendant was in part fulfillment of said contract.

The court charged the jury that this contract for the purchase of said premises, though not in writing, was not void ; and that if the one hundred dollars paid was in part performance of that contract, the plaintiff could not recover it back of the defendant, if there had been no breach of the contract by the defendant, or said Drown, and they were ready and willing, and had offered to perform on their part ; that if the contract was that said notes and mortgage were to be given to Horace Drown, the plaintiff had a right to insist upon their being so executed, and if James Drown or the defendant refused to have them so executed, the plaintiff might refuse to go on with the contract and recover back the one hundred dollars he had paid. To this charge the plaintiff excepted. The jury rendered a verdict for the defendant.

*G. C. & G. W. Cahoon,* for the plaintiff.

*T. Bartlett, Jr.,* for the defendant.

The opinion of the court was delivered by

REDFIELD, CH. J. The parties in this case both agree that the contract, being one concerning the title of land and not reduced to writing, was within the statute of frauds. No question seems to have been made, at the time, but the one hundred dollars was paid towards the agreed price of the land, and, under the charge of the court, the jury have found that there was no failure to perform the contract upon the other side, by giving the deed as stipulated, and that no demand was made of the plaintiff in regard to executing his notes, or to whom they should be made payable,

different from the contract. The jury must have found this in order to have given a verdict for the defendant under the charge.

The only question remaining in the case then is, whether the party paying part of the purchase money of an estate, when the contract is within the statute of frauds, may, at his election, and while the other party is ready and willing to perform on his part, recover it back.

This we understand to be in conflict with all the decisions upon the subject; *Shaw* v. *Shaw*, 6 Vt. 69; *Smith* v. *Smith*, 14 Vt. 440.

It is the universal rule upon this subject that the party cannot recover in such case. The statute does not render the contract void, but only provides that no action shall be maintained upon it. But for all purposes of defense the contract is perfectly valid, as has been often decided in different forms of action. What is done under the contract, and in part performance of it, is perfectly valid. And the payment of part of the price in money is as much part performance of the contract as paying it in labor, as in the cases cited above. And it is none the less part performance because it is not such a part performance as will in equity take the case out of the statute. Equity does not regard this such part performance as to take the case out of the statute because the money, at law, is full compensation. But we are not to infer from this that the party may always recover the price paid. He may recover it in that class of cases where equity, for other reasons, will decree a conveyance; that is, where the other party declines to convey. If the other party is ready and willing to convey, according to the contract, as in this case, there is no occasion to go into a court of equity, or to bring an action for the price.

But where the other party refuses to convey, if possession has been taken under the contract, equity will decree a conveyance, and if no possession has been taken, the party may recover back what he has paid. But so long as the party agreeing to convey is ready and willing to perform, he is not liable to any action, either at law or in equity, for anything done under the contract.

Judgment affirmed.