# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

---

HENRY C. SMEAD *v.* JAMES H. LAMPHER.

Special Term at Brattleboro, February, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 19, 1913.

*Statute of Frauds—Sale of Land—Contract—Construction—*
*Modification—Time of Performance—Rescission—Notice—*
*Review—Presumption in Support of Decree.*

Where a purchaser paid earnest money and agreed to pay the balance
of the purchase price as soon as he could dispose of certain prop-
erty, the law implied that he agreed to dispose of that property
within a reasonable time, at the expiration of which the vendor
was entitled to recover the balance due, regardless of whether
the purchaser had then disposed of that property.

Where a purchaser of land paying earnest money agreed to pay the
balance of the purchase price as soon as he could sell his own
land, and about four months thereafter the purchaser, not having
sold his land, at the suggestion of the vendor that "we can fix
it up in some way so it will be satisfactory to both of us," paid
$300 more on the purchase price and took up his residence on
the land, the deviation from the original contract, acquiesced in

by both parties, rendered the time of performance not of the essence of the contract, even if it was that originally.

Where a contract for the purchase of land fixed no time of performance, the vendor, by notice to the purchaser, might limit him to a reasonable time within which he should perform or lose his rights under the contract.

Where a contract for the purchase of land fixed no time of performance, and the vendor after long delay notified the purchaser that he must perform within 30 days or lose his rights, formal notice of abandonment by the purchaser was not essential, where his acts showed his election to rescind the contract pursuant to the terms of the vendor's notice.

Where defendant contracted by parol for the purchase of land and paid a part of the purchase money, he cannot recover that money on the ground that the contract is within the Statute of Frauds, where the vendor is ready and offers to perform.

In a suit by a vendor for specific performance of a parol contract for the sale of land, where the purchaser filed a crossbill seeking to recover money paid on the purchase price and obtained a decree giving him affirmative relief, on appeal it will be presumed in support of the decree, where the facts found by the master warrant an inference of rescission by mutual assent, that the court below drew that inference.

In equity each party to a mutually rescinded contract is entitled to have restored to him whatever has been received by the other by virtue of the contract, and so, where the parties to a contract for the sale of land mutually rescind, the purchaser is entitled to a return of the purchase money with interest, and the vendor to an accounting for benefits received by the purchaser while occupying the land.

APPEAL IN CHANCERY. Heard on the pleadings and master's report, at the April Term, 1912, Windham County, *Fish*, Chancellor. Decree dissolving the injunction restraining the defendant from prosecuting his suit at law against the orator to recover the money paid on the purchase price, rescinding the contract between the parties, and adjudging that the orator pay the defendant $656.15 with costs of this suit and of said suit at law. The orator appealed.

*Herbert G. Barber* and *Frank E. Barber* for the orator.

*A. D. V. Piper* for the defendant.

WATSON, J.   Before and on October 13, 1910, the orator lived in Wardsboro, this State, and was the owner of real estate there located, and described in the master's report, it being his farm and homestead, also of the personal property enumerated therein, on said farm.   At the same time, the defendant lived in Manorville, on Long Island, in the State of New York, and owned certain real estate there.

On the day named, at the orator's said farm, the orator and the defendant entered into a verbal contract whereby the orator agreed to sell and convey his real estate and personal property above mentioned to the defendant for the sum of thirteen hundred fifty dollars.   The defendant agreed to take the property at that price, then and there paying the orator the sum of one hundred dollars toward the purchase price and taking his receipt therefor.   The master finds that the time when the balance of the purchase money should be paid, a deed and the possession of the property given, was not definitely agreed between the parties, but it was understood to be as soon as the defendant could dispose of his said property on Long Island.   And such being the understanding, the law implied that the defendant should dispose of it within a reasonable time, and if he failed so to do the orator was entitled to the balance due him, notwithstanding this property was not sold.   *Capron* v. *Capron,* 44 Vt. 410; *Sears* v. *Wright,* 24 Me. 278; *Crooker* v. *Holmes,* 65 Me. 195, 20 Am. Rep. 687; *Nunez* v. *Dautel,* 19 Wall. 560, 22 L. ed. 161.

The Statute of Frauds is set up as a defence in the answer, but we pass over that question since, as will be seen, the decree as rendered could not have been based upon that ground.   Our consideration will be confined to the question of rescission or abandonment of the contract, and questions incident thereto.

On December 18, the orator by letter asked the defendant concerning the time of his coming, saying, "I believe you thought it would be in February."   Defendant's answer to this inquiry does not appear.   On January 13, 1911, the orator in a second letter to the defendant said, "Of course I would like to close

the deal as soon as you can, for it will be better for both of us.
If you can come now soon I think we can fix it up some way so
it will be satisfactory to both of us at as much as you can start
with,'' etc.   On the 23rd of that month, the defendant came to
the home of the orator on the farm in question.   Though he had
not sold his property on Long Island, he then paid to the orator
on the purchase price of the property within the contract the
sum of three hundred dollars, taking his receipt covering this
payment, the one hundred dollars paid at the time of entering
into the agreement, and twenty-five dollars received by the ora-
tor for the bull which he had sold from the personal property
included in the sale to the defendant, total, four hundred twenty-
five dollars.   The receipt previously given for the one hundred
dollars was then destroyed by mutual consent. ·  Remaining
there, the defendant at first, and later, his wife and ·child with
him, boarded in the orator's family until April 24, when de-
fendant's household furniture arrived.   The defendant and his
wife then set up a part of the furniture in two rooms in the
orator's house, thenceforth boarding themselves.   The rest of
their furniture was stored in a chamber of the house.   The
defendant's wife cooked their food on the orator's stove until
trouble arose between the parties about the 5th of May, after
which she went to the house of some neighbor to do part of her
cooking, claiming the orator's wife would not let her build a
fire in the stove in the afternoon.   The defendant was not per-
mitted, by the orator, to set up a stove in the house while there.

On April 10, the defendant paid the orator the further sum
of two hundred dollars on the purchase price and took his re-
ceipt therefor.   On the 19th of May, the orator notified the de-
fendant that he must pay up or get out in thirty days.   In
consequence of this notice the defendant purchased another
place and, on May 26, moved his furniture and his family away
from the orator's premises, without giving notice to the orator,
and unbeknown to him.   When the orator learned they were
gone, he went to see the defendant to ascertain if he was not
going to take the place according to the trade.   The ·Long Is-
land property had not then been sold and deeded by the defend-
ant and was not until July 20, 1911.

It is clear that the parties were not acting upon their origi-
nal understanding whereby time for completion was made de-

pendent upon defendant's sale of his said property, nor upon their legal rights under it. According to the orator's letter of December 18, to which allusion has been made, the defendant, when making the agreement, mentioned February as the time when he thought he could come to complete the transaction. And with this in mind the orator, in the fore part of January, by letter to the defendant, expressed his desire to close the deal, and suggested that if the defendant would come up soon they could fix it up in some way satisfactory to both. Within ten days thereafter the defendant went from his home to the orator's place, making another payment the day of his arrival, and still another, in April—the three payments aggregating six hundred dollars. And previous to the defendant's leaving the premises in question he attempted to raise money with which to make final payment, but was unsuccessful. If time be considered as originally of the essence of the contract, such deviation from the original understanding with consequent legal implications, acquiesced in by both parties, operated to render it otherwise. Yet in these circumstances if the defendant was guilty of unnecessary delay, the orator had a right, by notice to the defendant, to limit a reasonable time, according to the circumstances of the case, within which complete performance must be had or the contract be rescinded. *Thompson* v. *Dulles*, 5 Rich. Eq. 370; *Falls* v. *Carpenter*, 1 Dev. & B. 237, 28 Am. Dec. 592; *Green* v. *Sevin*, 13 Ch. Div. 589; *King* v. *Wilson*, 6 Beav. 126; *Taylor* v. *Brown*, 2 Beav. 180. In the case last cited the Master of the Rolls said, that in cases where the contract and the circumstances are such that time is not in equity considered to be of the essence of the contract, "if any unnecessary delay is created by one party the other has a right to limit a reasonable time within which the contract shall be perfected by the other. It has been repeatedly so considered in this court; and where the time has been thus fairly limited, by a notice stating that within such a period that which is required must be done or otherwise the contract will be treated as at an end, this court has very frequently supported that proceeding; and bills having been afterwards filed for the specific performance of the contract, this court has dismissed them with costs." Much to the same effect is *Battell* v. *Matot*, 58 Vt. 271, 5 Atl. 479.

By the notice from the orator to the defendant, if valid,— and no claim is made that it was not,—time was made essential, and the latter had one of two courses to pursue: complete performance on his part within the time there specified or "get out," the second alternative being by fair and reasonable construction, "or abandon the contract." It should seem that for financial reasons the only course in fact available to the defendant was followed. Within the time thus limited he moved his furniture and his family away from the orator's place, and immediately after the expiration of the specified period he brought the suit at law against the orator to recover back the amount of the payments made on the purchase money. It is found that the defendant gave the orator no notice that he was going to move away from the premises prior to his going. But formal notice thereof was not essential. His acts may be considered as sufficient manifestation of his election to rescind the contract, pursuant to the terms of the orator's notice. *Davenport* v. *Crowell,* 79 Vt. 419, 65 Atl. 557. If the parties concurred in such rescission, the contract was dissolved by their united assent and neither can compel a specific performance— the rights of each under it are ended. *Graves* v. *White,* 87 N. Y. 463. Under his crossbill, the defendant seeks and was granted affirmative relief: the decree was in part that the orator pay to the defendant the amount of the three part payments of the purchase money. The decree in this respect could not be based on the ground that the contract was within the Statute of Frauds, the orator being ready and offering to perform on his part. *Shaw* v. *Shaw,* 6 Vt. 69; *Cobb* v. *Hall,* 29 Vt. 510, 70 Am. Dec. 432. It could be rendered in the circumstances of this case only on the ground that the contract was rescinded by mutual consent. Whether there was such a rescission was a question of fact not expressly determined by the master. Yet such rescission may be inferred from the facts reported as fairly resulting therefrom, and to uphold the decree it will be presumed that such inference was drawn by the court below. *Davenport* v. *Crowell,* cited above.

In equity each party to a contract annulled by mutual consent is entitled to have restored to him that which has been received by the other by virtue of the rescinded contract, and properly belongs to the former. Applying this principle, the

defendant is entitled to the return of the purchase money paid
by him, with interest, and the orator is entitled to an equitable
accounting by the defendant for benefits received by way of use
of, and income from, the property in question. *Smith* v. *Stew-
art,* 83 N. C. 406. See also *Brewster* v. *Wooster,* 131 N. Y. 473,
30 N. E. 489. In affirming the decree, therefore, such altera-
tion will be directed as may be necessary to include such an
accounting.

*Decree affirmed and cause remanded with directions that
the decree be altered to include an equitable accounting by the
defendant to the orator for benefits received by way of use of,
and income from, the property in question. Let the cause be
proceeded with accordingly.*