CHARLES MORTENSEN, Appellant, v. FREDERICKSON BROS. et al, Appellees.

**SALES:** Mutual Rescission—Nonallowable Demurrer. A petition which
1  distinctly alleges (1) a specific oral contract of rescission of a contract of sale, and (2) an implied contract of rescission by reason

of the conduct of the parties, and prays such recovery as will place plaintiff *in statu quo*, is not demurrable because the petition does not allege facts which would negative the rights which the defendant might have exercised, had there been no express or implied contract of rescission.

PLEADING: Speaking Demurrer. A demurrer is bad which must be supported by matter outside the pleading at which it is aimed.

*Appeal from Shelby District Court.—J. B.* ROCKAFELLOW, Judge.

JANUARY 19, 1921.

ACTION at law to recover amount claimed to be due plaintiff under contract of rescission. The opinion states the facts.— *Reversed.*

*Edward S. White* and *Robertson & Robertson,* for appellant.

*Preston & Dillinger* and *Thomas H. Smith,* for appellees.

FAVILLE, J.—I. On or about the 5th day of December, 1919, the plaintiff filed in the office of the clerk of the district court of Shelby County, Iowa, his petition, as follows:   ,

"Count I.

1. SALES: mutual rescission; non-allowable demurrer.  "Plaintiff for his cause of action against the defendants Frederickson Bros., a copartnership, Hardy Frederickson and Malling Frederickson personally, as individual members of said copartnership, jointly and severally, states:

"That said defendant Frederickson Bros. is now and has been continuously all of the year of 1919 a copartnership, composed of said Hardy Frederickson and Malling Frederickson as the only individual members thereof; that, during all said time, they have been engaged in farming, stock raising, feeding cattle and buying and selling cattle on their farms near Avoca, Iowa.

"That plaintiff is a farmer and stock buyer, and has been such continuously during all of the year 1919, and that his resi-

dence during said time has been and is now at Underwood, Iowa.

"That, on or about May 19, A. D. 1919, under and by virtue of an oral agreement made and entered into by and between the plaintiff and the defendants, the plaintiff purchased and the defendants sold to him 191 head of cattle, at the price of $14.75 per hundredweight, and, as a part of said oral agreement, plaintiff had 10 days in which he could take the cattle at any time when he wanted to do so, but he had to take them at the end of the 10 days. And as a part of said oral agreement, it was so agreed and understood between said parties that said cattle were to be left upon said defendants' farm near Avoca, Iowa, until shipped by plaintiff, and that the defendants were to furnish the plaintiff the necessary water for said cattle free of charge, and permit him to keep said cattle upon their farm and in their feed lots free of charge; but the plaintiff was to purchase and pay for the corn and hay and other grain to feed said cattle while he kept them on their farm or farms, and was to feed and take care of said cattle himself while he kept them there, as above stated.

"That, before the expiration of the said 10 days after the making of said contract, and within the time that the plaintiff had the right to take said cattle, as he and the defendants figured the time, it was further mutually orally agreed by and between the plaintiff and the defendants that the plaintiff could leave said cattle in the defendants' yards upon their farms just as long as he wanted to before he shipped them, if he would purchase the necessary feed to feed them and feed them during said time, the defendants to furnish all of the necessary water for said cattle until they were shipped by the plaintiff, free of charge; that, on or about June 3, A. D. 1919, it was further mutually agreed by and between said parties that the said cattle should be weighed up to plaintiff on that date, and that he should take and receive the cattle at that time; and that the said cattle were weighed on or about said time and actually turned over and delivered by the defendants to the plaintiff herein as his cattle, under and by virtue of said oral contract and the said changes and modifications thereof, as above alleged.

"That, after said cattle were weighed and delivered to plaintiff, as above stated, he purchased one carload of corn to

feed said cattle, at the price of $2,054.56, which plaintiff paid on or about June 9, A. D. 1919; that said corn was used in feeding said cattle, and that plaintiff also paid freight on the shipment of said carload of corn, on or about July 14, A. D. 1919, in the sum of $67.98. That plaintiff further purchased and paid for another carload of corn which he fed to said cattle, and that said carload of corn cost plaintiff the sum of $2,988.72; that plaintiff purchased hay and oats of the value of $200, which he fed to said cattle after the same were turned over to him; and that he afterwards paid the defendants on the price of said cattle the sum of $250, in addition to said $2,000 above referred to, such payment of said $250 being a part of a check that one Frost gave the plaintiff, and which the plaintiff transferred to defendants, and the defendants received the money thereon.

"Plaintiff further alleged and shows to the court that the said first carload of corn was, at the time and place the plaintiff purchased and fed the same to said cattle at the place where he did feed the same to said cattle, of the fair and reasonable market value of $2,054.56; that said second carload of corn above referred to was of the fair and reasonable market value, at said time and place, of $2,988.72; that said freight charge of $67.98 was a fair and reasonable freight charge for the shipment of said corn to said place; that $3.00 for salt, which plaintiff purchased and fed to said cattle at said time and place, was the fair and reasonable value thereof; and that $200 was the fair and reasonable value of the oats and hay purchased and fed to said cattle by plaintiff at said time and place; and that the corn, hay, oats, and salt were of the fair and reasonable total aggregate market value of $5,314.26.

"Plaintiff further states that he purchased and fed said corn, hay, oats, and salt to said cattle after the same were delivered to him, and under and by virtue of said oral agreement of purchase of the same and by reason thereof.

"Plaintiff further states and shows to the court that, after said cattle were delivered to him, on or about June 3, 1919, that he continuously thereafter took care of said cattle and fed and watered and cared for them until the 27th of July, 1919; that the fair and reasonable value of his time and services in feeding, watering, and taking care of said cattle during said

time at said time and place was at least $100 per week; and that said services were of the total fair and reasonable market value at said time and place of $800.

"Plaintiff further states that, after he purchased said cattle as above stated, and while he was keeping the same under said oral agreement upon the defendants' premises, as above alleged, he purchased a certain bull for $75, and gave his check for $75 in payment for the same, and by mutual oral agreement between plaintiff and defendants, and with their knowledge and consent, plaintiff kept said bull with said 191 head of cattle upon defendants' premises, and fed and cared for said bull with said other cattle until he drove the same to Avoca, Iowa, preparatory to shipping all of them to the market at South Omaha, Nebraska.

"That, on or about July 27, A. D. 1919, plaintiff again weighed said cattle upon defendants' scales on their premises, and the defendants assisted him in driving the cattle out of said feed lots on their said farms and into the road of public highway, so that he could drive all of said 191 head of cattle and the said bull to Avoca, Iowa, for the purpose of shipping them to South Omaha, Nebraska, to be sold on the market at said place, and plaintiff did drive them to Avoca, Iowa, for said purpose on said date.

"Plaintiff further states that, after he had driven said cattle and bull to Avoca, Iowa, or near there, the defendants and one A. C. Meitzen, acting as agent for them, demanded of plaintiff the immediate payment of the balance of the purchase price for said cattle, and in substance stated to plaintiff that, unless he paid the balance of said purchase price for said cattle immediately,—that is, that night,—and before he put the same in the stockyards of the railway company at Avoca for shipment, that defendants would take said cattle back as their own cattle; and that plaintiff was unable to pay defendants that night the balance of the purchase price for said cattle, and it was mutually orally agreed and understood between the plaintiff and the defendants then and there that the defendants were to take said 191 head of cattle back, and that they were to take and receive from the plaintiff the said bull, as their own property, and that the said oral contract of purchase hereinbefore referred to between said plaintiff and the defendants herein was

to be, and the same was in fact, rescinded, and the plaintiff put the defendants *in statu quo,*—that is, he delivered back to defendants the said 191 head of cattle, and also delivered to them the said bull, and the defendants accepted said cattle and bull as their own property, and thereafter, and on that same night, shipped said cattle from Avoca, Iowa, to South Omaha, Nebraska, as their own cattle, and sold said cattle afterwards as their own cattle, and received the price that the cattle and said bull brought, and have used and appropriated said price which they received for said cattle to their own use and benefit. But the defendants have refused and still refuse to put the plaintiff *in statu quo,* after said contract of purchase of said cattle was rescinded, as above stated, in that said defendants have failed and neglected and refused to pay back to plaintiff the said $2,250 that he paid them upon the purchase price of said cattle under said contract, and the amount of money as hereinbefore alleged that plaintiff paid for corn which he fed to said cattle, and the amount that he paid for hay and oats and salt which were fed to said cattle by him as above alleged. And the said defendants have failed and neglected and refused to pay plaintiff for the value of his services during the 8 weeks that he fed and cared for said cattle, as above stated.

"That, by reason of the above and foregoing facts, there is now due and owing from said defendants to this plaintiff, upon the rescission of said agreement by which plaintiff purchased said cattle, and by reason of the rescission of said agreement, as above alleged, the total sum of $8,364.26, with 6 per cent interest thereon since July 28, A. D. 1919.

## "Count II.

"Plaintiff, for another and further cause of action against the defendants above named, jointly and severally, states:

"Plaintiff hereby refers to and adopts all of the allegations and paragraphs of Count I of this petition, except the first paragraph of the first page thereof, to the first word, namely, 'Plaintiff,' in the last paragraph of page 4 of said petition, and hereby makes each and all of said paragraphs and allegations a part of this count as fully and completely, and with the same force and

effect, as though literally repeated and set forth in this second count hereon.

"Plaintiff further states and shows to the court that, after he had driven said cattle to Avoca, Iowa, or near there, defendants and one A. C. Meitzen, acting as agent for them, demanded of plaintiff the immediate payment of the balance of the purchase price for said cattle, and, in substance, stated to plaintiff that, unless he paid the balance of said purchase price for said cattle immediately,—that is, that night before he put said cattle in the stockyards of the railway company at Avoca for shipment, that said defendants would take said cattle back as their own cattle; and that plaintiff was unable to pay defendants that night the balance of the purchase price for said cattle, and so informed defendants then and there; and then the said defendants, with the consent of plantiff, did take said cattle back as their own cattle, and also took and received and accepted the said bull as their own property, with the knowledge and consent of plaintiff, and as a part of said transaction between plaintiff and the defendants at said time; and plaintiff did deliver said cattle back to defendants, and they received and accepted the same and said bull at said time as their own property, and thereafter, and on said night of the 27th of July, A. D. 1919, did ship said cattle including said bull from Avoca, Iowa, to the stockyards at South Omaha, Nebraska, to be sold upon the market there as their own cattle, and the said defendants did thereafter, in fact, sell said cattle, or cause the same to be sold, as their own property, and received the proceeds of the sale of said cattle as their own property, and have used and appropriated the proceeds of such sale to their own use and benefit; that, therefore, the said acts and conduct of plaintiff and defendants at said time in relation to said cattle and bull, as above stated and set forth, was a rescission of the oral agreement by which the plaintiff purchased from the defendants the said 191 head of cattle. And that the plaintiff did, by consenting for the defendants to take said cattle back, and in delivering said cattle back to them at said time, as above stated, and the defendants receiving and accepting said cattle, as above alleged, the plaintiff thereby put the said defendants *in statu quo* in the transaction and under the agreement by which he had purchased said cattle from them, as here-

inbefore stated and set forth; but the said defendants have failed, refused, and neglected to put the plaintiff *in statu quo* in said transaction and under said agreement by which he purchased said cattle, in that they have failed, neglected, and refused to pay him back the said $2,250 that he paid them upon the purchase price of said cattle under said agreement of purchase, and the amount of money that he paid for corn, hay, oats, and salt, and for freight, on account of said agreement as hereinbefore alleged, or any part thereof, and that the said defendants have also failed and neglected and refused to pay plaintiff for the value of his services during the 8 weeks that he fed and cared for said cattle as above alleged, in the sum of $800.

"That, by reason of the above and foregoing facts, the said agreement of purchase of said cattle by plaintiff from the defendants, as above alleged, was intended to be rescinded, and was in fact and law rescinded, and was so understood by said parties at said time; and that, therefore, the plaintiff is entitled to be put *in statu quo* by defendants upon the rescission of said agreement, and there is now due and owing from said defendants to this plaintiff upon the rescission of said agreement by which plaintiff purchased said cattle, and the said rescission of said agreement as above alleged, the total sum of $8,364.26, with 6 per cent interest thereon since July 28, A. D. 1919, which defendants have failed, neglected, and refused to pay, and still refuse to pay the same to plaintiff."

Plaintiff prayed judgment for the sum of $8,364.26, with interest. To this petition the defendants filed the following demurrer:

"I.   Come now the defendants, and enter their appearance herein, and demur to the first count of the petition, upon the ground that the facts stated in the said count do not entitle the plaintiff to the relief demanded, or to any relief, because:

"(a)   It appears upon the face of said Count I that the purchase and sale of the cattle therein referred to was a cash transaction, and that no part of the purchase price for said cattle has been paid, except the sum of $2,250; that a large part of the purchase price for said cattle has never been paid, and, under the law, the defendants had a vendor's lien upon said cattle, to secure the payment of the balance of the purchase price.

"(b)   The said Count I fails to show that the cattle therein referred to were sold to the plaintiff upon time or credit, and fails to show that the plaintiff has paid the full purchase price thereof, and fails to show that the contract of purchase and sale was ever fully executed, and, under the law, the defendants had the right to either retain possession and control of the cattle until the purchase price was fully paid, or to rescind the contract of purchase and sale and to recover from plaintiff the difference, if any, between the market value of the cattle at the time of rescission and the unpaid balance of the purchase price, or to resell the said cattle and apply the proceeds of such sale upon the unpaid balance of purchase price.

"(c)   The said Count I of the petition fails to show the amount of the unpaid balance of purchase price, as determined by the weights of June 3, 1919, and fails to show the amount for which said cattle were sold by defendants on the Omaha market, and fails to show that any part of the proceeds of such sale remained in defendants' hands after the balance of the purchase price was satisfied out of the proceeds, and fails to show what, if any, amount was realized by defendants from the proceeds of sale over and above the unpaid balance of purchase price.

"(d)   Because the said Count I of the petition shows upon its face that plaintiff voluntarily surrendered the possession of said cattle, including the bull referred to, upon demand of the defendants, because of the failure and inability of the plaintiff to pay the purchase price, and that, under such state of facts, the vendors' lien of defendants, if ever lost under the averments of said count, was reestablished, and the defendants had a right to resell said stock, and to retain from the proceeds of sale a sufficient amount to satisfy the unpaid balance of purchase price.

"(e)   Because it affirmatively appears upon the face of said Count I that the purchase price has not been fully paid; that, by the contract of purchase and sale, no credit or time for payment was given to plaintiff; and that, under such state of facts, the defendants acted wholly within their rights in retaining the possession of the cattle and reselling the same.

"II.   The defendants demur to the second count of the

petition upon the ground that the facts stated in said count do not entitle the plaintiff to the relief demanded, and for the same reason and grounds as are set out in detail and specifically stated in the foregoing demurrer to the first count of the petition, with like purpose, intent, and effect as though such grounds and reasons were specified at length herein, and by reference the reasons and grounds of demurrer set out in the first division hereof are referred to herein with like force and effect as though set out separately and in detail herein, and the first division hereof is by reference made a part hereof.''

The demurrer was submitted and sustained as to both counts of the petition. Thereupon, the plaintiff elected of record to stand on his petition, and as he refused to plead further, a judgment was entered, dismissing the petition.

The sole question presented for our consideration is whether or not the petition is vulnerable to the demurrer lodged against it. The arguments have taken an exceedingly wide range in the submission in this court. We are favored with extensive briefs and with elaborate arguments on the question of vendors' liens and the powers and rights of a vendor of personal property. As we view the case, a large portion of this discussion is not germane to the questions raised by this demurrer. Counsel for the appellees, in their argument, in effect treat the demurrer in the nature of what is known as a ''speaking demurrer:'' that is, a demurrer which introduces some new fact or averment which is necessary to support the demurrer, and which does not appear distinctly upon the face of the petition. *Brooks v. Gibbons,* 4 Paige (N. Y.) 374; *Ramage v. Towles,* 85 Ala. 588.

It is very clear that this action is brought by the plaintiff on a claimed rescission of a contract of purchase and sale. The theory of the plaintiff's case, as shown by his petition, is that he entered into a contract with the defendants for the purchase of certain cattle; that he paid part of the purchase price for the same; that he expended money in procuring feed for said cattle, and performed services in caring for the same, and that thereafter, by mutual agreement between the parties, the contract was rescinded, and the defendants were placed *in statu quo*. The theory of his action is that, under such circumstances,

the plaintiff should be placed *in statu quo*, and the suit is brought to recover the amount necessary to place the plaintiff *in statu quo*, under the claimed rescission.

If plaintiff's petition does not make a case of this character on paper, then he has not pleaded any cause of action. The theory of the appellees is that the plaintiff is not entitled to recover on the theory of a rescission of the contract and a restoration of the *status quo*, but that the appellees had a vendor's lien, and had a legal right to take the cattle in controversy, under such vendor's lien. We are, therefore, compelled to examine the petition, to discover whether the same pleads a cause of action on the theory of rescission, and whether the petition on its face is vulnerable to the demurrer on the theory urged by the appellees. Fairly construed, we think the petition alleges the following state of facts regarding the question presented for our consideration:

1. The formation of an oral contract between the plaintiff and the defendants, whereby the plaintiff purchased and the defendants sold to him certain cattle, under an arrangement and agreement regarding the possession and care of said cattle.

2. A modification of said original agreement for an extension of time for performance of the same in regard to the feeding and care of the cattle.

3. An allegation of the expenditures of the plaintiff in performing the said contract on his part.

4. A demand by the defendants for the payment of the balance of the purchase price, and at said time a "mutual, oral agreement" that the defendants were to take said cattle as their own property, and that the original contract of purchase between the plaintiff and the defendants "was to be, and the same was, in fact, rescinded."

5. That the plaintiff placed the defendants *in statu quo*.

6. That the defendants have refused to put the plaintiff *in statu quo*.

The second count of the plaintiff's petition alleges substantially the same general facts, without alleging a specific, mutual, oral agreement to rescind, but alleges a redelivery of the *cattle*, and that, by the acts of the parties, as set forth, there was a rescission; that the plaintiff put the defendants *in statu quo*, and

that the defendants have failed and refused to place the plaintiff *in statu quo*. In other words, one count of the petition is a specific allegation of a mutual agreement of rescission, and the second count of the petition is an allegation of rescission by the acts of the parties. The demurrer is addressed to both counts of the petition. The appellees' argument is based largely on the propositions contained in Paragraph "b" of their demurrer, which is as follows:

"(b) The said Count I fails to show that the cattle therein referred to were sold to the plaintiff upon time or credit, and fails to show that the plaintiff has paid the full purchase price thereof, and fails to show that the contract of purchase and sale was ever fully executed, and under the law the defendants had the right to either retain possession and control of the cattle until the purchase price was fully paid, or to rescind the contract of purchase and sale, and to recover from plaintiff the difference, if any, between the market value of the cattle at the time of rescission and the unpaid balance of the purchase price, or to resell the said cattle and apply the proceeds of such sale upon the unpaid balance of purchase price."

Broadly speaking, the appellees' contention is that the demurrer was properly sustained, because, under the allegations of the petition, it affirmatively appears that the plaintiff had not fully performed his contract of purchase, and had paid but a comparatively small portion of the purchase price; that the contract of purchase and sale had never been fully executed; and that the defendants had the right, under the law, to either retain possession and control of the cattle until the purchase price was fully paid, or to exercise their right as vendors and rescind the contract of purchase and sale, regain possession of the property, and recover from the plaintiff the difference, if any, between the market value of the cattle at the time of rescission and the unpaid balance of the purchase price, or to resell the cattle and apply the proceeds of such sale upon the unpaid balance of the purchase price.

The argument of the appellees takes a wide range in respect to the rights of a vendor of personal property. As we have said above, the appellees' pleading is in the nature of a speaking demurrer. There is nothing in the plaintiff's petition with re-

gard to a vendor's lien, or the rights of a vendor of personal
property. As we construe the allegations of the
plaintiff's petition, it is the pleading of an action
predicated upon an alleged oral agreement to
rescind a contract of purchase and sale. The plaintiff alleges
the making of an original contract; alleges part performance
thereunder; alleges a mutual agreement to rescind said contract
and restore the *status quo;* alleges that, so far as the defendants
are concerned, the *status quo* has been restored, and asks to be
placed *in statu quo* himself. Now the appellees' demurrer, as
we view it, does not challenge the legal sufficiency of the petition
to plead a cause of action of this character. Among other things,
the demurrer suggests that the petition fails to show that the
plaintiff has paid the full purchase price thereof, and fails to
show that the contract of purchase and sale was ever fully
executed. Granting this to be true, the plaintiff is not bringing
this action to recover on an executed contract, nor is he claiming
that he fully performed the contract himself. He is suing for
restoration under an alleged mutual agreement of rescission.
We think that, in such an action, it is not incumbent upon the
plaintiff to allege full performance of the original contract on
his part. That is not the character of his action.

Again, it is alleged in the demurrer, and argued at length,
that the defendants had the right to either retain possession
and control of the cattle until the purchase price was paid, or to
rescind the contract of purchase and sale, and recover the differ-
ence between the market value and the unpaid balance of the
purchase price, or to resell the cattle and apply the proceeds of
the sale upon the unpaid balance of the purchase price. As we
have said, much of appellees' argument is devoted to a discus-
sion of the rights of a vendor of personal property where the
vendee has failed to pay the purchase price. We are not con-
cerned in the instant case, as we view it, with a discussion of
these propositions of law, many of which are correctly stated by
counsel for appellees, and amply supported by authority.

It may be conceded that, in the instant case, the plaintiff
had paid but a small portion of the purchase price; that the
vendor had a right to the enforcement of a vendor's lien, had
a right to recover possession of the property sold, and to proceed

2. PLEADING:
speaking demur-
rer.

to sell and dispose of the same. Granting all of this, it is also equally true that the defendants had the right to do that which amounted to a waiver of these rights, and to make a new agreement with the plaintiff, if they chose so to do.

Let us suppose that the plaintiff's petition alleged the identical matters that it does in regard to the original contract of purchase and sale, and that it also alleged that, after the making of said contract, the parties got together and mutually agreed that the vendor should sell the cattle for not less than a price agreed upon by the parties, and should account to the plaintiff for all that the cattle brought above such stated price. If an action was brought, and the petition alleged the making of such a new contract, and alleged that the cattle were sold for a certain price in excess of the agreed price, and that the defendants had refused to pay the plaintiff such excess under the new contract, would such a petition be demurrable because it failed to allege facts respecting the vendor's lien on the property under the original contract?

The petition in the instant case, as we interpret it, pleads specifically the making of a new contract between the parties, to wit, a contract for the rescission of the original contract of purchase and sale, and the restoration of the *status quo*. Certainly, the parties had a right to make such a new contract. They had a right to make any kind of a new contract respecting the subject-matter that was not in violation of law.

Suppose that, under all the circumstances alleged in the petition respecting the original contract and the things done under it, the plaintiff had alleged that, at the time and under the conditions pleaded, the parties had mutually agreed that the contract should be abandoned, and the cattle turned over to the defendants, and the defendants should pay the plaintiff in cash the sum of $1,000, and the suit was brought to recover said sum, would a demurrer raising the question of a vendor's lien, or the rights of a vendor under the original contract to retake the cattle, challenge the sufficiency of the petition in such a case? We think not.

As we construe the petition in this case, it is the pleading of a new contract entered into between the parties, providing for the rescission of a former contract. What defenses the ap-

pellees might see fit to interpose to plaintiff's claim are not before us for determination, and we do not think appellees can, in effect, anticipate such defenses by the allegations of a demurrer to plaintiff's petition. It is undoubtedly the law that the parties to a contract can mutually agree to a rescission of the same. This is the rule of our cases. *Pardoe v. Jones,* 161 Iowa 426, 430; *Tague v. McColm,* 145 Iowa 179; *Quarton v. American Law Book Co.,* 143 Iowa 517, 528. Such agreements to rescind or abandon contracts are enforced at law. *Rogers v. Rogers,* 139 Mass. 440 (1 N. E. 122); *Conkling v. Tuttle,* 52 Mich. 630 (18 N. W. 391); *Coyner v. Lynde,* 10 Ind. 282; *Bishop v. Busse,* 69 Ill. 403; *Durant Lbr. Co. v. Sinclair & S. Lbr. Co.,* 2 Ga. App. 209 (58 S. É. 485); *Schwab v. Baremore,* 95 Minn. 295 (104 N. W. 10); *Byers v. Chapin,* 28 Oh. St. 300; *Davenport v. Crowell,* 79 Vt. 419 (65 Atl. 557).

So well recognized is this rule that the Supreme Court of Pennsylvania, in *Dick v. Ireland,* 130 Pa. 299 (18 Atl. 735), declares:

"It may be doubted if any business man in the state is so ignorant of law as not to know that the parties to a contract may rescind it at any time by mutual act and consent."

The petition in this case is predicated on the theory that the parties mutually agreed to a rescission of the former contract existing between them.

This is not the pleading of a mere legal conclusion. It is the pleading of a mutual agreement, and what that mutual agreement was. This is an ultimate fact. We do not think this petition subject to this demurrer, because it did not set forth the defendants' rights under the original contract, and how such rights could be enforced by a vendor's lien. Plaintiff's claim is not brought on the original contract. It is brought on an alleged *new* contract, claimed to have been entered into by mutual agreement between the parties, and plaintiff is seeking to recover under that new contract.

As before stated, we are not concerned, in the inquiry before us, as to whether the plaintiff can establish his claim, or as to what defenses thereto are available to defendants. All we hold is that, on its face, the petition states a cause of action which was not vulnerable to the demurrer interposed by defendants. If

the rescission of the original contract was by mutual consent, as alleged, then its legal effect, unless otherwise changed by agreement of the parties, would be to restore both parties, as far as possible, to their former situation, and to reinvest each with the title and right to what he had parted with under the contract. *Western Union Tel. Co. v. Kansas Pac. R. Co.,* 4 Fed. 284; *Colson v. Smith,* 9 Ind. 8; *Smead v. Lampher,* 87 Vt. 1 (86 Atl. 1005); *Nason v. Woodward,* 16 Iowa 216, 219; *Reiger v. Turley,* 151 Iowa 491, 501; *Redman & Fear v. Malvin & Cloud,* 23 Iowa 296; *Pedley v. Freemen,* 132 Iowa 356, 359; *Downey v. Riggs,* 102 Iowa 88, 92; *Jones v. Grove,* 76 Wash. 19 (135 Pac. 488); *McClaskey & Crim v. O'Brien,* 16 W. Va. 791. As we read the petition, this is the precise thing plaintiff seeks. He alleges the creation of a new contract by which the former contract was rescinded, and seeks to recover the damages that legally follow such rescission. We are not concerned in this appeal with the measure of damages, or for what items plaintiff may recover, if at all.

II. Count II of the petition pleads a rescission based on the acts and conduct of the parties, instead of upon a specific agreement.

"The rescission of a contract by mutual consent does not require a formal agreement or release, but may result from any act or any course of conduct of the parties which clearly indicates their mutual understanding that the contract is abrogated or terminated, or from the acquiescence of one party in its explicit repudiation by the other." 2 Black on Rescission and Cancellation, Section 528, citing *Hartnett v. Baker,* 20 Del. 431 (56 Atl. 672); *Boyden v. Hill,* 198 Mass. 477 (85 N. E. 413); *Creamery Pkg. Mfg. Co. v. Sharples Co.,* 98 Mo. App. 207 (71 S. W. 1068); *Herpolsheimer v. Christopher,* 76 Neb. 352 (107 N. W. 382, 111 N. W. 359, 9 L. R. A. [N. S.] 1127, 14 Ann. Cas. 399); *Burns v. McFarland,* 146 N. C. 382 (59 S. E. 1011); *Kelly v. Short,* (Tex. Civ. App.) 75 S. W. 877; *Marsh v. Despard,* 56 W. Va. 132 (49 S. E. 24).

The demurrer is interposed to this count, as well as to Count I. The petition alleges, in Count I, an express oral contract to rescind. In Count II it alleges a rescission by acts and conduct. The pleading was not attacked by motion. The

demurrer admits the verity of the facts well pleaded. There can be rescission by the acts and conduct of the parties, without an express oral agreement to rescind. The second count of the petition pleads a rescission by such acts and conduct. The question of defendants' rights to a vendors' lien on the property cannot be raised in the manner sought by this demurrer.

We have not attempted to review in this opinion the authorities cited by appellees, discussing the rights of a vendor of personal property and how such rights may be enforced. These are all matters that may very properly arise in the further proceedings in this case. We are limiting our holding to the one proposition that the plaintiff's petition states a cause of action on its face that was not vulnerable to such objections as could properly be urged under the demurrer interposed by defendants.

It follows that the demurrer should have been overruled, and the ruling of the lower court sustaining the same is, therefore,—*Reversed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.