O'BRIEN v. ILLINOIS SURETY CO.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1913.)

No. 2,260.

1. DAMAGES (§ 78*)—BREACH OF CONTRACT—LIQUIDATED DAMAGES OR PENALTY.

Where a ground lease for 97 years contained provisions under which it might be previously terminated, and required the lessee to erect during the first year a fireproof modern building of specified size and character, and the lessee gave a surety bond in the penal sum of $5,000, conditioned that he would erect the building described within the time specified, and in the construction thereof would comply with all building laws, and that no mechanics' or material liens should exist, the sum named in the bond was a penalty; and hence, on the lessee's failure to erect such a building, plaintiff was not entitled to recover the penal sum of the bond as liquidated damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 157–163; Dec. Dig. § 78.*]

2. PRINCIPAL AND SURETY (§ 66*)—GROUND LEASE—ERECTION OF BUILDING—LESSEE'S DEFAULT—DAMAGES.

Where a ground lease for 97 years, providing that the tenant should erect a business building on the property during the first year, which building should belong to the landlord at the termination of the term, also contained stipulations under which a reversion might occur and the building become the property of the landlord at an earlier date, in which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

case its erection would materially increase the rental value of the premises on re-entry by the landlord, and would also serve as security for the payment of rent and taxes which might be in default whenever the lease terminated, the lease having been terminated because of the lessee's default, and he having failed to erect any building on the property, the landlord's damage to the extent of the lessee's default at the time of the termination of the lease, and to the extent that the building, if erected and reverting, would indemnify him therefor, was not speculative, so as to preclude a recovery on the bond of the tenant's surety up to the penalty thereof.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 108–110, 112; Dec. Dig. § 66.*]

**3.** APPEAL AND ERROR (§ 837*)—AMENDED PETITION—ALLEGATION OF FACTS ARISING SUBSEQUENT TO SUIT.

Where no objection to the filing of an amended petition, alleging material facts on which the action was sustained, arising after suit brought, was made either in the trial court or on appeal, and there was nothing to indicate that any statute of limitations had run pending the suit, defendant was not prejudiced by the court's treatment of the amended petition as the commencement of a new suit, and considering the facts alleged therein essential to establish a cause of action.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3278; Dec. Dig. § 837.*]

**4.** LANDLORD AND TENANT (§ 49*)—GROUND LEASE—FORFEITURE—EFFECT—DAMAGES FOR PAST DEFAULTS.

Where a ground lease for long term not only required the lessee to erect a business building on the property during the first year, but also provided for a forfeiture and termination in case of certain defaults by the lessee, the lessor's subsequent notice of forfeiture and re-entry for the lessee's defaults, while terminating the lessor's right to further accruing rent, were not acts of rescission, but rather acts of enforcement, and hence did not preclude a recovery on the tenant's bond for damages arising from prior defaults.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 117–119; Dec. Dig. § 49.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio; William L. Day, Judge.

Action by P. C. O'Brien against the Illinois Surety Company. Judgment for defendant, and plaintiff brings error. Reversed, and remanded for new trial.

O'Brien, as owner, leased to one Nolan, for 97 years from January 1, 1907, a vacant business lot in Cleveland. The agreed rent was $3,600 for the first two years, and thereafter $2,000 per year, all payments to be made quarterly in advance, and the lessee was also to pay all taxes imposed. Nolan also agreed to erect on the premises, within the first year, "a brick building, of fireproof construction, substantial and modern in all respects, not less than two stories in height, having a frontage of not less than 60 feet and a depth of not less than 50 feet, the front of said building to be of pressed brick, with stone trimmings." The lessor reserved the usual right of re-entry in case the lessee violated any of his agreements. It was further agreed in the lease that Nolan should give a bond to secure to O'Brien the erection of the building; and, accordingly, a bond was executed and delivered in the penalty of $5,000 signed by Nolan, as principal, and by the Surety Company, the defendant in error, as surety, conditioned that Nolan would, within the time limited in the lease, erect the building therein described, that in the construction thereof all building laws would be observed, and that no mechanics' or material liens against the building should exist. The erection of the

building was not commenced as agreed; O'Brien notified the Surety Company that if the building was not erected he would look to it for indemnity; no one did anything about the building; and Nolan never paid any rent or taxes.

In January, 1909, O'Brien brought this suit against the Surety Company, alleging the facts above recited, but not alleging that the lease contained any covenant by the lessee to keep the building insured or in repair. Pending demurrers and amendments, and on March 11, 1909, O'Brien gave Nolan notice to cancel and forfeit the lease, and thereafter, the default continuing, O'Brien re-entered. He then included, in an amended petition in this case, an allegation of such notice and re-entry. The court below sustained the demurrer of the Surety Company, and, plaintiff not further amending, dismissed the complaint. The writ of error which challenges this result necessarily involves every element of plaintiff's right to recover.

Stearns, Chamberlain & Royon and Wm. A. Carey, all of Cleveland, Ohio, for plaintiff in error.

A. J. Hopkins, of Chicago, Ill., and Joseph H. Wenneman, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and McCALL, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] 1. The court below properly held against plaintiff's theory that he was entitled to recover the sum named in the bond as liquidated damages. To meet the well-established principle that the penalty cannot be considered as a sum agreed upon for liquidated damages, when it appears that it was to secure the performance of each of several different conditions of varying degrees of importance and involving varying amounts of injury to the obligee (Bignall v. Gould, 119 U. S. 495, 7 Sup. Ct. 294, 30 L. Ed. 491; Lansing v. Dodd, 45 N. J. Law, 526), the plaintiff urges that the three things here contemplated were the erection of the building, the observance of the laws and the avoiding of the liens, and that these three things were successive, each being the only operative condition while it was active, and so that the rule just cited is avoided. It is sufficient to say of this contention that, whatever its merit otherwise might be, it is not applicable here. The first condition, the erection of the building, permitted a great variety of breaches, which might have ranged from the total absence of any building all the way down to some slight deficiency in form or size or trimmings. It is not to be supposed that the parties contemplated the payment of $5,000 if the builder used plain brick, instead of pressed brick, on the front, and the payment of the same amount if there was no building at all. The sum named in the bond was clearly a penalty, intended to indemnify O'Brien against such damages as the law might declare owing to him for any breach of any condition of the bond.

[2] 2. Defendant urged that the building was to belong to the lessee, and the lessor had, during the term, no interest therein; that the lessor's sole measure of damages for its nonerection was the lessened value of the reversion falling in at the end of the stated term, which expectant diminution must be reduced to terms of present worth; and that, with a 97-year lease and a building of the character described, and without covenant to insure or to keep in repair, such damage was so speculative as to be incapable of computation; and, hence, in practical effect, that

the bond was wholly inoperative. We do not doubt that a building so promised constitutes, in effect, additional rent, payable at the end of the term, and that the present worth of such future subtraction from reversion value is the primary and ordinary measure of damages (Doe v. Rowland, 9 C. & P. 734; Cooper v. Randall, 59 Ill. 317); but the application thereof sought by plaintiff overlooks two considerations.

The first is this: The lease was not for an unalterable term of 97 years. It carried the seeds of an earlier ending, and when these seeds developed into cancellation, in March, 1909, the term was ended. March, 1909, became, by relation, both the agreed end of the term and the end of the agreed term; and it was necessarily within the contemplation of the parties that a reversion might occur and the building might become the property of the landlord at that earlier date, as well as at the end of the 97 years. Since the only purpose of construction is to arrive at the true intent of the parties, it may not necessarily follow that in every case of this character the lessor is entitled to the full value of the agreed, but nonexisting, building as of the date when such premature reversion occurs, although this would seem to be the rule announced by the Supreme Court of Ohio, in Rock v. Monarch Building Company, 100 N. E. 887 (decided December 17, 1912). We now only point out that such a reversion was clearly in the minds of the parties, and that the provisions of their contract must be construed as having due reference to that contingency.

The second consideration to which we referred is this: Whenever a building, to be erected by a lessee, will materially increase the rental value of the premises, and the lease reserves to the lessor such a periodical rent that his stipulated right of re-entry into the vacant premises may not be, of itself, ample indemnity for any default, it is clear that the building is intended to constitute, not only an additional rental payable at the end of the term, but also an additional security for the rent currently accruing. This intention is not alleged in the petition now under review, but we think the allegation unnecessary. Such intent stands out on the face of every such contract, and only under unusual conditions could it be lacking.

From these considerations, it is apparent that such building has a double character. It is a contingent, future, bonus rent, to fall in at the end of the maximum period, or at some uncertain earlier period, and, as such, it is more or less speculative. It is also a continuing, actual, and valuable security for each installment of rent as the same accrues, and in that capacity, and to that extent, is not, in the least, speculative. In a case like the present, and so far as concerns the lessee's completed defaults, the speculative difficulty disappears when the lease ends.

It follows that plaintiff was entitled to have this building in existence to serve as security for whatever payments of rent and taxes might be in default whenever the lease terminated, and to the extent that these were in default, in March, 1909, and to the extent that the building, if erected and reverting, would have made him good therefor, plaintiff is entitled to damages, and the surety on the bond is liable therefor, up 'n the penalty of the bond. How far, if at all, the surety

is entitled to have such damages minimized by prompt forfeiture and efforts at re-rental, or by proving that, pending the term the lease was in force, the value of the reversion has increased, are questions not involved; and there is, on this record, too uncertain a margin remaining in the penalty above defaulted rent and taxes to require that we decide the full theoretical extent of plaintiffs' right.

Our conclusion that damages are recoverable finds support in the opinion of Judge Sanborn in American Bonding Co. v. Pueblo Co., 150 Fed. 17, 80 C. C. A. 97, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357 (C. C. A. 8th), and in the principle which was assumed, though not applied, in Real Estate Co. v. McDonald, 140 Mo. 605, 41 S. W. 913, and which was recognized and partially applied in Longfellow v. McGregor, 61 Minn. 494, 63 N. W. 1032, and in Johnson v. Cook, 24 Wash. 474, 64 Pac. 729. These cases all go on the theory that such buildings or improvements are security for the performance of other parts of the contract. Chamberlain v. Parker, 45 N. Y. 569, urged as holding to the contrary, is clearly distinguishable. The grant there involved was not of a leasehold, but of a fee, and there never would be any reversion, unless upon the happening of a specified and not very probable condition subsequent. The improvement to be made upon the premises by the grantee was the sinking of a well in search for oil, and the well would never be of any value to any one, even to the grantee, unless the search was lucky; and, even in that event, the value was wholly speculative. We quite agree that the damage to the grantor by the failure to sink the well would not support an action.

[3] 3. In what we have said, and in the point to be discussed, we treat the amended petition, showing that the lease had been canceled, as though it was the only petition before us. We see no substantial harm in so doing. It does allege facts which we treat as important in determining the existence of a right of action, and which did not occur until after the original petition was filed; but the point that no such amendment could be permitted, or that these supplemental allegations should be stricken out, was not made in the court below, nor is it made here. There is nothing to indicate that any statute of limitations had run pending the suit, or that the substantial rights of any one will be prejudiced if the amended petition is treated as though it commenced a new suit.

[4] 4. Defendant's real contention, with reference to this supplemental matter, is that thereby the plaintiff had rescinded its contract with Nolan, lost all right of action against him, and voluntarily terminated the existing, dependent action against the surety. This contention misconceives the nature of the lease and of the termination. The notice of proposed cancellation and the re-entry were not acts of rescission; they were acts of enforcement; they were pursuant to, and in execution of, the express provisions of the contract and the powers thereby conferred. They did put an end to the further accruing of rent, and so defeat any right to claim, against Nolan or the surety, damages which would rest solely and directly upon rent thereafter accruing; but as to the defaults which had occurred, and to the extent of the damages which, because of such defaults, then had accrued against Nolan and the surety, they had no destructive effect. Anvil Co.

v. Humble, 153 U. S. 540, 552, 14 Sup. Ct. 876, 38 L. Ed. 814; Hayes v. Nashville, 80 Fed. 641, 26 C. C. A. 59 (C. C. A. 6th); American Co. v. Pueblo Co., supra.

We hardly need to say that we are reviewing a judgment entered on a demurrer, and that we have considered the contract in suit only so far as it appears by and is interpreted by the declaration; it will be for the trial court to give appropriate force and effect to any further facts that may appear.

The judgment must be reversed, with costs, and the record remanded for a new trial.