S. R. MILLER, Appellant, v. W. L. McCONNELL, Appellee.

VENDOR AND PURCHASER: Rescission and Abandonment—Effect
1  —Liquidated Damages and Status Quo. The act of the vendor in a contract of sale, in selling the subject-matter of the sale to a third party, prior to any *unqualified* refusal by the vendee to perform (time not being essence of the contract), and the act of the vendee in acquiescing in such sale, work a complete mutual rescission or abandonment of the contract, and, in addition, two further and necessary results, viz.:

1. The vendor may not (on the theory of a breach by vendee) recover the liquidated damages provided in the former contract, and

2. The vendee may recover of the vendor the purchase price paid.

PRINCIPLE APPLIED: Plaintiff agreed to sell and defendant agreed to buy certain real estate, deal to be closed *on or about* March 1st. Defendant paid plaintiff $940 on the contract. Shortly prior to March 1st, the parties had talks concerning performance. Defendant was sick. He had not s⸍¹ another farm, and did not have the money to close the new deal. An extension was talked of. Defendant wanted to sell the farm back to plaintiff. Plaintiff refused. Plaintiff claimed that defendant directed him to rent the farm, or do the best he could with it. Defendant denied this. The trial court evidently found that defendant's denial was true. At no time did defendant *unqualifiedly* refuse to perform the contract. On March 1st, plaintiff rented the farm for one year, and four weeks later sold the farm and lease to a new purchaser. Defendant never made any objection to this sale. Plaintiff sought to recover $2,000 as liquidated damages, provided in the contract for a breach by either party. Defendant counterclaimed for the $940. *Held* that plaintiff and not defendant had breached the contract; that the parties had mutually rescinded; that such rescission precluded plaintiff from recovery under the contract; and that defendant was entitled to recover the amount paid on the purchase price.

APPEAL AND ERROR: Review—Questions of Fact—Findings—
2 Conclusiveness. Jury being waived, the findings of the court are as conclusive as would have been that of the jury.

CONTRACTS: Action For Breach—Selling Subject-Matter of Con-
3 tract—Justification. A party to a contract may not dispose of the subject-matter of the contract and hold the other in damages as for a failure or refusal to perform, until the conduct of such other party has been such as to evince an unqualified intention not to perform the contract.

PRINCIPLE APPLIED: See No. 1.

PLEADING: Issue, Proof and Variance—Evidence. Where plain-
4 tiff pleaded solely for a recovery of liquidated damages provided for in a contract of sale, evidence relating to defendant's statements in regard to reimbursing plaintiff for commissions paid by plaintiff in effecting the contract, is inadmissible because not applicable to the issues.

APPEAL AND ERROR: Decisions Reviewable—Exclusion of Ques-
5 tions—Necessity to Show Prejudice. Error may not be predicated upon the mere exclusion of a question. Some offer of proof must appear as to what the answer would have been.

*Appeal from Washington District Court.*—JOHN F. TALBOTT, Judge.

THURSDAY, MAY 11, 1916.

REHEARING DENIED SATURDAY, FEBRUARY 17, 1917.

ACTION to recover liquidated damages based upon a failure of defendant to perform a contract at the time stipulated. Counterclaim to recover money paid upon the purchase price of the land, based on the ground of mutual rescission of the contract of sale. Judgment for the defendant in the court below. Plaintiff appeals.—*Affirmed.*

*Edmund D. Morrison,* for appellant.

*Eicher & Livingston,* for appellee.

**1.** VENDOR AND PURCHASER : rescission and abandonment : effect : liquidated damages and *status quo.*

GAYNOR, C. J.—On the 21st day of March, 1913, plaintiff and defendant entered into a written contract, by the terms of which plaintiff agreed to sell to the defendant certain real estate, consisting of about 240 acres of land situated in Washington County, Iowa, for the sum of $37,2C9; $1,000 to be paid at the time of the execution of the contract, and $16,000 on the 1st day of March, 1914; the balance to be paid by assuming a certain mortgage then on the land, and by executing to the plaintiff a note and second mortgage. In this contract was the following stipulation:

"It is hereby agreed by and between the parties, that in the event of the failure of either party to fulfill his part of the contract, the party failing to comply with his part of the contract shall pay to the other the sum of $2,000 as liquidated damages for failure to comply with the terms thereof."

It appears that, at the time this contract was executed, the defendant paid to the plaintiff $940 of the amount stip-

ulated in the contract. This action was commenced on the 27th day of August, 1914, and it is claimed by the plaintiff, the vendor in said contract, that, at all times since the making of this contract, he has been ready, able and willing to perform it; that, on the 14th day of February, 1914, and at divers other times during the month of February, the defendant notified him that he was unable to comply with his part of the contract and to make payment and accept deeds as in the contract provided; that he urged the defendant to comply with the terms of the contract, and offered that, if defendant would, on the 1st day of March, 1914, pay $5,000 of the consideration provided for in the contract, he would extend the time of final settlement under the contract from the 1st day of March, 1914, to the 1st day of March, 1915; that defendant refused and neglected to accept the offer, and instructed the plaintiff to rent said real estate, and to sell the same and do the best that he could with it; that, about two weeks after the 1st of March, 1914, the plaintiff rented the real estate that was the subject of the contract, for the year ending March 1, 1915, and thereafter, on the 28th day of March, 1914, sold the real estate and conveyed the same to the purchaser; and he asks to recover the $2,000 liquidated damages provided in the original contract, with 6 per cent interest from March 1, 1914. The defendant, answering, says that, about February, 1914, he informed the plaintiff that he was unable to complete the sale, and that, thereupon, plaintiff retained possession of the real estate, rented the same, beginning with March 1, 1914, and has appropriated the rent; that he (defendant) has never had possession of said real estate; that, after the 1st of March, 1914, the plaintiff resold the real estate, and has taken the consideration therefor; that no written notice or declaration of intention to forfeit was ever given this defendant; and he prays that plaintiff's petition be dismissed, and that he have judgment against the plaintiff for the $1,000 paid,

with interest from the 21st day of March, 1913. He fur-
ther amends his answer by saying that the contract was
mutually rescinded in 1914, and plaintiff waived and sur-
rendered all rights in the contract. Upon the issues thus
tendered, a jury was waived, and the cause tried to the
court.

The record discloses the contract made, as alleged by
the plaintiff, and that, at the time of the execution of the
contract, the defendant paid the plaintiff $940, instead of
$1,000. The undisputed evidence shows that, in February,
1914, in a hotel at Washington, plaintiff and defendant had
a conversation touching the carrying out of this contract;
that the defendant told the plaintiff at that meeting that
he had not yet sold his farm, and did not have the money
to meet the contract at the time, and wanted to know if
he could sell the farm back to the plaintiff, and plaintiff
told him he would not buy it back; that, subsequently, in
the same month, another conversation occurred between
them, in which there was some talk about extending the time
for settlement; that plaintiff testified:

"We had some talk about his wanting an extension of
time of settlement for a year, to give him a chance to sell
his farm. He said he would like such extension if he could
not sell the farm back to me. I said I would see if I could
give him a year."

Plaintiff further testifies:

"About the 15th of March, I saw him again at his home.
I asked him what he was going to do about the farm. He
said, 'I can't do anything with it. You have to rent it or
do the best you can with it.' He said he was not able to
discuss the question. I went ahead and rented it to Jo-
seph Wehr for one year. At the time he was lying on a
couch. I believe he was sick."

This was all the plaintiff's testimony. Defendant testi-
fied, touching the conversation had on the 15th day of

March, that he had been in bed for about two weeks; that there was little said between him and the plaintiff.

"I told him I was sick, and not able to do anything. He said he thought it was time for me to do something, and for me to come to some judgment. I said, 'When I get out of bed, I will talk to my attorneys, and then I will tell you what I am going to do.' There was nothing said about re-renting or reselling. I had no knowledge it was rented until I heard it was rented to Wehr. There has never been any notice of the forfeiture of the contract served on me. I told him I was not going to do anything about the place until I got out of bed and saw my attorneys; that I was not able to talk business."

This is all the testimony. It appears that, on the 20th day of March, 1914, the plaintiff leased this land in controversy to one Wehr, the lease expiring the 1st day of March, 1915; that, on the 28th day of March, 1914, he sold the land to one I. K. Beal, and assigned to Beal the Wehr lease. Upon this record, the court dismissed plaintiff's petition, and entered judgment for the defendant for the amount paid by the defendant on the contract; and from this, plaintiff appeals.

While plaintiff assigns many errors for reversal, they may be summed up in this: First, the decision is not sustained by the evidence, and is contrary to the evidence; second, the decision is contrary to law. There are some other errors suggested, to which we will advert later in this opinion.

2. APPEAL AND ERROR: review: questions of fact: findings: conclusiveness.

This is a law action, and, therefore, on all disputed questions of fact, the finding of the court has the same force and effect as the verdict of a jury. The only fact about which there is controversy is as to what was said between the parties on the 15th day of March, 1914. The plaintiff claims that, in this conversation, the defend-

ant directed him to lease or rent the farm and do the best he could with it. This is denied by the defendant, and his contention is that he told the plaintiff he was going to do nothing about the place until he got out of bed (he being then sick), and consulted with his attorneys; that at that time he was not able to talk business. We must assume, therefore, that the court found the fact to be as contended for the defendant, in so far as this finding is essential to support the judgment.

We have, then, a record in which the original contract was made between these parties to be performed on the 1st day of March, 1914; the contract continued in full force and was recognized by both parties as a binding contract at all times up to the 1st day of March at least, at which time, by the terms of the contract, each was called upon to perform his part of the contract. We may assume this, although the time was not made the essence of the contract. A few days before the 1st of March arrived for the consummation of the agreement, the parties had a conversation in which the defendant, without having any demand upon him for performance, because the time for performance had not yet arrived, told the plaintiff that he did not have money to meet the contract at the time; that he had not yet sold his farm, and wanted to know if he could sell back to the plaintiff the land covered by the contract. Subsequently, and in the same month, and before the time of the performance of the contract, they had a further talk about extending the time for settlement, that the defendant might have a chance to sell his farm and meet the payments required of him in the contract; and in this conversation he also expressed himself as wishing an extension of time, that he might sell his farm to meet the payments. In neither of these conversations, as detailed by the plaintiff, did the defendant repudiate the contract. He simply said he would be unable to meet the contract on the 1st of March,

as he had not yet sold his farm, and did not have the money. That was the first conversation in February. Plaintiff said that, in the second conversation in February, he talked with the defendant about an extension of time for settlement, to give defendant a chance to sell his farm; that defendant said he would like an extension if he could not sell the land back to plaintiff. The plaintiff said then that he would see if he couldn't give him a year; and about a week later, he told defendant he could extend it for one year on certain conditions. No response seems to have been made to this by the defendant. As to what occurred on the 15th day of March, there is a sharp conflict in the evidence. The court evidently found that defendant's version of what transpired there represented the transaction as it actually occurred, and his version of what occurred is that the plaintiff called on him at his home while he was sick in bed and wanted to know what he was going to do about the farm, and defendant informed him he was sick and not able to talk business; that he was in fact sick at the time; that he told him he was not going to do anything until he got out of bed and saw his attorneys. He further testified:

"There was nothing said about renting or reselling the property. I had no knowledge it was rented until I heard it was rented."

The contract provides that the conveyance shall be made by warranty deed on or about the 1st of March, 1914, accompanied by an abstract of title showing title in fee simple and perfect of record, without encumbrance, except as provided in the contract. There is no evidence that the plaintiff prepared or tendered to the defendant at any time, on or about the 1st day of March or otherwise, a warranty deed as provided in this contract, or an abstract of title showing title in fee simple and perfect of record, without encumbrance, except as provided in the contract. There is no evidence that the plaintiff ever demanded performance of the defendant of the contract at any time, except as dis-

closed in the conversations hereinbefore set out. In these conversations, he did not offer to perform on his part, but sought information from the defendant as to the defendant's attitude towards performance and as to his ability to perform. Nowhere did he notify the defendant that he would insist on a strict performance by the defendant of the contract. The most that can be said in this record is that the defendant, prior to the time when it is claimed the contract should have been performed, notified the plaintiff that he could not perform the contract on the 1st day of March, unless he could sell his farm; that if he could not sell his farm, he could not perform; that at that time he had not sold his farm, and at that time, a day prior to the date fixed for the performance, he was not in a condition to perform. He simply said he would be unable to meet the contract, as he had not yet sold his farm and did not have the money. Time was not the essence of the contract, and even assuming that he was required to perform on the 1st day of March—although the contract says on or about the 1st of March—the record does not disclose that he was called upon by the plaintiff then to perform, or that any notice was given him that, if he did not perform, his rights would be forfeited. In the last conversation of March, taking defendant's version of it (which the court might well assume to be the correct version), he did not then repudiate the contract. The plaintiff, however, without notice to the defendant, without demanding of the defendant a strict performance of his contract, rented the land to Wehr for one year, and on the 28th day of March sold and conveyed his title to Beal, thus taking it absolutely out of his power to perform the contract.

3. CONTRACTS: action for breach: selling subject-matter of contract: justification.
There was no evidence of any unqualified refusal on the part of the defendant to perform, prior to the sale made by plaintiff. There was no evidence that the defendant did not intend to be bound by the contract

at the time the sale was made. There must be something in the conduct of the party who is claimed to be in default which evidences an intention to be no longer bound by the contract, before the other can treat the contract as breached, and dispose of the subject-matter of the contract, and hold the other in damages as for a failure or refusal to perform. The failure of a party to perform his contract does not *per se* rescind the contract. The other party may still insist upon it, or he may, within a reasonable time, give notice of an intention to also retire from the contract.

In the case at bar, the plaintiff, without any unqualified refusal on the part of the defendant to perform, without demand on the defendant to perform, without notice to the defendant that he would insist upon a performance, disposed of the subject-matter of the contract, and placed it out of his power to perform. The plaintiff breached the contract, the defendant acquiesced in the breach, and therefrom followed what in law amounts to a mutual abandonment of the contract. The only right left was the right to be restored to his position as it was before the contract was made.

Where one party is ready, able and willing to perform, and tenders performance, and the other refuses to accept the tender of performance, or perform, the party tendering may consider the contract as rescinded and no longer binding upon him. He may consider it breached by the party who thus refuses to perform. Where the default is such as to justify the party not in default in rescinding and terminating the contract, the defaulter is presumed to assent to such termination. The circumstances must be such as manifest an intention on the part of the party claimed to be in default to abandon the contract, or no: to comply with its terms in the future. The evidence does not disclose this condition of mind on the part of the defendant.

It is contended, however, that, in mak-

**4. PLEADING:** issue, proof and variance: evidence.

ing up the record, the court erred in the rejection of testimony offered by the plaintiff. We have examined the record in this respect, and find that the testimony offered was not relevant to the issue made, and, further, there is no showing in the record that the answers to these questions, if permitted, would have been helpful to plaintiff's contention. The plaintiff did not seek to recover for any damages based on any expense incurred by him in reselling the land or in bringing about a sale to the defendant. The questions propounded which plaintiff was not permitted to answer called for what was said by the defendant, if anything, about paying back the commissions to the plaintiff, at the time they had their conversations in Febru-

**5. APPEAL AND ERROR:** decisions reviewable: exclusion of questions: necessity to show prejudice.

ary. There was no evidence that plaintiff had paid any commissions, and if he had, it would be immaterial under the issues made. Further, there is nothing to indicate what the answers would have been, had the witness been permitted to answer.

We find no reversible error in the making of the record, and the cause is therefore—*Affirmed.*

All the justices concur.