W. A. SMUTZ, Appellant, v. BELLE HOLLIDAY et al., Appellees.

**VENDOR AND PURCHASER:** Damages—Delay in Performance of Contract. Where the purchaser of land did not unqualifiedly refuse to perform, but told the seller that she was expecting to pay him out of land that she was to sell, and that this had not been done yet, and that she was hoping every day that someone would take it, and that the quicker she sold her place, the sooner she could pay him, and the seller did not tender her a deed, there having been no waiver or excuse for lack of the tender of a deed, the seller could not recover damages against her for a breach of the purchase; and the fact that the bank wrote the seller that the buyer's husband had turned over the key, and that she was going to forfeit the $100 she paid on the place, did not bind the buyer.

*Appeal from Henry District Court.*—JAMES D. SMYTH, Judge.

JULY 2, 1919.

ACTION at law to recover damages for an alleged breach of contract. Trial to a jury, and at the close of plaintiff's evidence, the trial court directed a verdict for defendant E. R. Holliday on the ground that he had not obligated himself in the written contract to pay for the property, and that plaintiff made no claim in the petition against him. We do not understand appellant to complain of this ruling. Some further testimony was then taken on behalf of plaintiff, and at the close of all the plaintiff's testimony, the

court then directed a verdict for the defendant Belle Holliday. Plaintiff appeals.—*Affirmed.*

*Ralph H. Munro,* for appellant.

*T. M. McAdam* and *W. F. Kopp,* for appellees.

PRESTON, J.—On August 19, 1915, the plaintiff and defendant Belle Holliday entered into a written contract for the sale of certain real estate, which contract was to be performed March 1, 1916. Though plaintiff's wife and defendant's husband signed the contract, the defendant's husband, E. R. Holliday, did not obligate himself to pay for the property. The vital part of the contract follows:

"Said W. A. Smutz agrees to convey his home in Van Buren County, Iowa, consisting of (5⅛) five and one-eighth acres (more or less) to Mrs. Ed. R. Holliday for the sum of ($6,000.00) six thousand dollars, ($100.00) one hundred dollars to be paid down on contract, ($900.00) nine hundred dollars on March 1, 1916, ($5,000.00) five thousand dollars to be secured by mortgage March 1, 1916, on delivery of deed for the land, the mortgage to bear 6 per cent interest, and to be given for (5) five years, interest to be paid semi-annually."

The contract was not carried out; and in April, 1916, plaintiff sold the premises covered by the contract at public sale, for $3,250, and made conveyance thereof at that time to the purchaser, one Bent. Thereafter, plaintiff brought this suit for damages, claiming that defendant contracted to purchase the real estate for $6,000, and did not carry out the contract, and that he was damaged thereby in the sum of $2,650. The answer admits the signing of the contract, but claimed that appellant had committed a fraud by representing that the premises were worth $6,000, when they were not worth over $3,000, and asked that the contract be reformed. All other allegations of the petition were denied. The equitable issue was transferred to the equity side of

the calendar and tried out, and there was a decree against the defendants. 'No appeal was taken therefrom. Appellant having set out this decree in his abstract, appellees filed an additional abstract, setting out the testimony of plaintiff that he gave in the trial of the equitable issue, that the property was at all times worth $6,000; and appellees contend that this was the ground of the finding of the trial court in entering a decree on the equitable issue, and that plaintiff's own evidence showed he had not been damaged, and that, this being so, there was no necessity for reforming the contract. However this may be, both sides concede that that question is not now in the case, and we shall spend no further time on that.

It appears that defendant Belle Holliday paid $100 down, but did not take the property, and paid no further sum on it. It also appears that, at all times covering the period in regard to this transaction, plaintiff was a married man. There is no evidence that either plaintiff or his wife ever tendered a deed to Mrs. Holliday, and there is no evidence in the record as to the attitude of plaintiff's wife as to whether or not she was willing to sign the deed. The plaintiff himself, as a witness, sought to testify that she was willing; but objection thereto was sustained, and there was no exception. Plaintiff testified that he was willing to convey, but did not show or testify that he was able to do so. The motion to direct a verdict in favor of defendant Mrs. Holliday, which the court sustained, is on substantially the following grounds: that the evidence fails to show that plaintiff ever tendered conveyance, or performance of his part of the contract, and that the evidence does not show that plaintiff was ready, willing, and able to perform his part of the contract on March 1st. It is claimed that the trial court based its ruling upon the principle announced in *Nelson v. Wilson*, 75 Iowa 710, holding that no action at law could be maintained by plaintiff without first ten-

dering a deed, and that a mere offer to do so is not suffi-
cient, even though defendant had declared in advance that
she would not accept it. This we understand to be appel-
lees' contention; and they further contend, and cite au-
thority in support of their claim, that, in a contract such
as this, there is an implied condition that the title of the
vendor is good or marketable, and that the grantee has a
right to a good title, and that the legal effect of contracts
to give title, or to deliver a deed to land under a contract
of purchase, is that the vendor shall give a good title; and
further, that, where a tender of performance is unnecessary,
it is still necessary to allege the ability and readiness on
the part of the vendor to perform; that the burden of proof
was on plaintiff to prove these things; that plaintiff, being
a married man, could not, under the statute, convey the
property by himself. No abstract of title was presented,
but plaintiff testified that he owned the property. Other
cases are cited, holding that a vendee is not required to ac-
cept a deed when tendered by a vendor, unless the wife is
joined therein. Appellant concedes the law to be as stated
by appellees, but contends that the testimony of plaintiff
that he was the owner of the property, and the signing of
a deed by his wife, when the property was sold to Bent,
make a sufficient showing of title, and of the willingness of
his wife to sign. Appellant also concedes that the rule is
as contended by appellees, that, ordinarily, a tender of a
deed is required before appellees would be required to pay,
since the contract requires Mrs. Holliday to make payment
on March 1, 1916, on delivery of deed. But appellant con-
tends, and cites several authorities holding, that, where
the vendee repudiates the contract before the time of per-
formance has arrived, it is unnecessary for the vendor to
aver and prove a tender or offer to perform, in an action
for a breach of the contract, because such a step would be
a useless ceremony. Appellant claims that there was such

a repudiation by the defendants before March 1st. This we conceive to be the turning point in the case. We are cited by appellees to 39 Cyc. 1543, to the point that, to effect a waiver or excuse for a tender, the alleged renunciation or refusal must be absolute and unequivocal, and that a refusal after the time for performance does not waive or excuse a tender. See *Miller v. McConnell,* 179 Iowa 377, 385. And they say that defendants had the right to rescind or treat the contract as at an end on March 2, 1916, which the defendants did do. They cite *Watters v. Pearson,* 163 Iowa 391, 399.

The facts relied upon by appellant as a waiver, or as excusing tender, are that, on February 26, 1916, defendant Mrs. Holliday sent plaintiff the following letter:

"Dear Sir:   Received your letter the other evening, will say in reply that it will be impossible for us to get money on my part of mother's place for it is not divided & you remember we said we would hafto depend on the place being sold.   Why couldn't you get the money from the bank on the place then you could rent the place & get the Ints. & then if the place was sold soon we would take it, but if you need the money before the place here is sold, if you found someone else would give you your price for your place you could sell it to them.   I hate it that the place was not sold but things like this happen to the best of people sometimes.   I think you could get the money on your place better than I could get it for I don't have nothing to give security on for. it would be impossible for one to give it on my part of the place as it isn't divided & I will just hafto be patient until it is sold.   You could rent the place then you wouldn't be losing anything.   There was several that wanted to rent it from us but we had promised you we would not rent it so we done as we agreed as far as we could so I don't think you will have any trouble renting it. There is no use for me to try to get any money for I can-

not until the place is sold. I keep hoping every day that someone will take it if you ever run across anyone wanting to buy a farm send them down the quicker the place is sold the sooner we can pay you if you still want us to take it, but otherwise it is impossible for me to get the money. Hopeing you will understand how it is with me, in regard to the money matter."

On February 28, 1916, plaintiff sent to defendants the following letter:

"Fairfield, Ia., Feb. 28-16.

"Mr. and Mrs. Ed. Holliday,

"Kind friends:

"I recd a letter from the Hillsboro Savings Bank today saying Ed had turned over the key and that you were going to forfeit the $100.00 you paid on the place. Now I don't want you to do that, as I have bought up here and I certainly have gave you the best of terms on that place, now for the payment you can give me your note with security for it, that certainly is as fair a proposition anyone could make. Now I want you to reconsider this, and not be too hasty in your answer, think it over one day at least, then let me hear from you direct.

"Yours. Respectfully,

"W. A. Smutz."

And on March 2d, after the time for performance had expired, defendant Mrs. Holliday wrote plaintiff, acknowledging the receipt of his of the 28th, and that they had thought the matter over and decided to let it go. The property was sold, as before stated, and in July, 1916, this suit was brought. Plaintiff testified that, after the first of March, he tried to sell the place to three or four other people; that his wife had no interest or ownership to the title in the property, other than the fact that she was his wife; that, after the first of March, he had a conversation with Mr. Holliday, and tried to get him to take the place, and

asked him if he couldn't go ahead and finish the contract; and that he said he couldn't. It is clear, from reading Mrs. Holliday's letter of the 26th, that it was not an unqualified refusal to carry out her part of the contract. The substance of it is that she was expecting to pay for it out of land that she was to sell, and that this had not been done yet, and that she was hoping every day that someone would take it, and the quicker the place was sold, the sooner she could pay plaintiff. Furthermore, it was within the power of plaintiff to put defendant to the test by tendering a deed. Assuming that the Hillsboro bank wrote plaintiff that defendant's husband had turned over the key, and that she was going to forfeit the $100, of which there is no other proof, this would not bind Mrs. Holliday. Without further discussion, we conclude that the trial court rightly directed a verdict for the defendants.—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.