W. D. McLain, Appellee, v. Frank D. Smith, Appellant.

VENDOR AND PURCHASER: Performance of Contract—Mutual In- 1 ability to Perform—Effect. So long as a vendor and a purchaser of real estate are mutually unable to perform, each is incapacitated from putting the other in default; and the contract necessarily continues in full force, without right in either party to maintain an action against the other. So held where a *defaulting* purchaser attempted to recover the purchase price paid, and where a *defaulting* vendor attempted to forfeit the contract.

VENDOR AND PURCHASER: Rescission of Contract—Mutual Re- 2 scission by Both Defaulting Parties—Recovery of Consideration. Mutual default of a vendor and a purchaser in the performance of a contract of purchase is no impediment to a *mutual* rescission; and the purchase price already advanced may be recovered, in the absence of an agreement to the contrary. Evidence held insufficient to show such mutual rescission.

VENDOR AND PURCHASER: Rescission of Contract—Vendor Re- 3 possessing Himself of Land. The act of a vendor in repossessing himself of the land which he has turned over to the purchaser does not *necessarily* constitute a rescission of the contract of sale.

VENDOR AND PURCHASER: Remedies of Vendor—Rescission and 4 Forfeiture Contrasted. Principle recognized that there is a broad distinction between the *rescission* and the *forfeiture* of a contract.

Headnote 1: 39 Cyc. pp. 1375, 2029. Headnote 2: 39 Cyc. pp. 1355, 2002. Headnote 3: 39 Cyc. p. 1357. Headnote 4: 39 Cyc. p. 1355.

*Appeal from Story District Court.*—Sherwood A. Clock, Judge.

February 17, 1925.

Rehearing Denied December 17, 1925.

Action by vendee, to recover from vendor money paid on a land contract. From a judgment in favor of the plaintiff, defendant appeals.—*Reversed.*

*John Y. Luke,* for appellant.

*Lee & Garfield,* for appellee.

Per Curiam.—The pleadings in this case are somewhat voluminous, covering 69 pages of abstract; and we shall not attempt to set out the substance thereof, but will collate facts and state material issues raised by the pleadings.

The appellant was the owner of a 287-acre farm in Story County, on the 20th of June, 1919. On that date he entered into a written contract with the appellee to sell the farm to the appellee for $96,366.10. $3,000 was paid down on the contract. The contract further provided for the payment of $30,866.10, to be paid on March 1, 1920. The balance of the purchase price was to be secured by appellee's making a mortgage to the appellant on the property contracted for, to run for ten years from March 1, 1920, at 5½ per cent interest, payable annually, with interest from March 1st, at the rate of 7 per cent per annum on all sums unpaid, payable semiannually. The time and times of payment were made the essence and important part of the contract; and any default in payments or agreements to be performed by second party in consideration of the damages, injury, and expense thereby resulting, made the agreement void and of no effect, "and second party will have no claim or equity against first party or the real estate, or any part thereof. If the second party pays in accordance with the terms of the contract, promptly at the time therein provided, first party will, on receiving such sum of money and interest, execute and deliver a warranty deed and furnish an abstract showing good and merchantable title."

1. Vendor and Purchaser: performance of contract: mutual inability to perform: effect.

In January, 1920, the defendant, then a resident of California, forwarded his abstracts of title to the Union National Bank, at Ames, and the bank delivered the same to the plaintiff, or his attorney, for examination. Appellee's attorney examined the abstract and made objections thereto, which objections were turned over to the bank at Ames on the 3d of March, 1920. On the 25th of January, 1920, the appellee wired the appellant as follows:

"Have not been able to sell any land purchased, hence will surrender your contract and forfeit payment, or if you will carry back $10,000.00, second mortgage, one year, 7 per cent on same can meet balance payment due March first. Wire answer."

On the 29th day of January following, appellant wired appellee:

"We are forwarding, through Pomona bank, letter to you and Union National Bank, with modification of contract to accord with conditions stated in your telegram. Contract to be extended one year."

At this time, the appellant took the matter up with his banker in Pomona, and authorized the banker to take care of the matter for him; and thereupon, the banker at Pomona wrote and forwarded the following letter to the Union National Bank at Ames:

"At the direction of Mr. Frank D. Smith, and in accordance with the telegram from W. D. McLain to F. D. Smith, which reads [see telegram above set out], we are instructing you that Mr. Smith will allow his contract of June 20, 1919, copy of which you hold, to remain in force subject to the provision that the cash balance due March 1, 1920, shall be changed to $20,866.10 and that the balance of $10,000.00 shall be due March 1, 1921, with interest at 7 per cent per annum, payable annually on same from March 1, 1920. The remainder of $62,-500.00 shall remain on same terms excepting that the deed and mortgage shall not be placed of record but held by you with the contract, and when the $10,000.00 payment has been made on March 1, 1921, or before, if the purchaser wishes to do so, then said deed and mortgage shall be placed of record and the contract carried out as provided for. We are sending a copy of this letter to Mr. McLain, and you will be governed thereby in

handling said contract for Smith and McLain. Kindly inform us as to the outcome of McLain's decision.".

The appellant did nothing to meet the objections to the title made by McLain's attorney, nor has he done anything up to the present time. The abstracts of title were not in evidence in the case, so we have no means of knowing whether the objections to the title were good or not.

On being informed of the contents of this letter last above referred to, appellee paid to the defendant the sum of $20,-866.10. On the first of March, 1920, appellee took possession of the farm contracted for, and rented the same to a tenant. On or about the 1st of September, 1920, appellee paid to the appellant $350, being the interest on the $10,000 for the six months from and after March 1, 1920.

On December 1, 1920, the defendant wrote Knapp at the bank, as follows:

"Received your letter in regard to Mr. McLain paying $5,000 instead of $10,000 March first next. Under the circumstances we will extend the time on second $5,000.00 with all interest to March 1st, 1921.

[Signed] "F. D. Smith"

It seems to be conceded that appellee realized that he would not be able to carry out his contract on March 1, 1921, and make the payment as therein provided. This information having reached Smith, the above letter is his response thereto. Nothing was done in relation to this matter from the date of the above letter up to the 1st of March, 1921. On the 8th of March following, Smith wired the Ames bank as follows:

"McLain remittance due March first not received. Why?"

In response to this, the bank wrote Smith, under date of March 10th, advising him that the matter had been taken up with McLain and his attorney, without any result, except a promise to do something in the future, and an expression of a hope that appellant would be lenient with appellee.

The record shows some further correspondence between Smith and the bank, and an effort on the part of the bank to get the matter in some way adjusted, with no result.

Appellee had not paid the taxes due on the first of March, 1921, in accordance with the contract, and Smith was complaining, in his correspondence, about this dereliction.

On the 26th of May, 1921, appellant received a letter from the bank, stating that McLain was unable to make the payments, and expressing the hope that Smith would be patient with him. On the 28th of June, Smith wrote the bank, in response to the above letter, that he had no desire to embarrass McLain, but felt that he had been patient with him; and stated that he had received neither rent nor interest, although McLain had received all of last year's crop, and that he was willing to give until August 1st, if it would accommodate McLain, but that, if McLain did not make arrangements for a substantial payment by August 1st, the bank was to return the contract to Smith.

On the 5th day of July, 1921, the bank wrote Smith that McLain was doing everything possible to pay. On the 13th of August, 1921, the bank returned the papers, including the contract and appellee's copy of the contract, to appellant, with the request that, if thereby Smith became possessed of two copies of the contract, the copy inclosed by the bank should be returned. The letter closes with:

"I imagine that he [McLain] wants to do something bad enough, but does not know which way to turn under these conditions."

On August 19, 1921, Smith wrote the bank, acknowledging receipt of the contract, and continuing:

"I am sorry McLain could not meet the payments. I am writing him that we are ready to do the fair thing. If we do not sell the farm again, and McLain is in a position to meet the payments, we are ready to renew this contract and give him credit for what he has paid us, if he still wishes to own the farm as per our contract."

One Andrews was the renter in possession of the farm under a lease from McLain at this time; and Smith, by correspondence, took up the matter with Andrews, the tenant, of renting him the farm from and after the first of March, 1922, when his lease expired with McLain. A written lease was made between Smith and Andrews in the latter part of the year 1921,

to commence March 1, 1922; and Andrews continued in possession of the farm. Some dispute arose between them as to who should collect the rent for the farm for the year ending March 1, 1922; but under the record, this rent was collected by McLain. Appellant testified that, under the terms of his contract, he understood that, when McLain failed to. make the payments, the contract was void and of no effect; and that, upon the recall of his papers, the matter was at an end. However, on the 11th of March, 1922, Smith caused to be served on McLain and the tenant, a notice of intention to declare a forfeiture of the contract; and on the 12th of April following, he served further notice on McLain; and in pursuance of the first notice, Smith declared and announced a forfeiture of all of McLain's right, title, and interest in and to the described real estate under the contract of June 20, 1919, and also a forfeiture of all payments made under said contract. Following this notice of forfeiture, and on April 13th, plaintiff caused to be served on the defendant the following:

"I hereby demand of you that you return to me the sum of $22,866.10, being the amount which I paid you upon a certain real estate contract for the purchase of 287.66 acres which contract you breached and rescinded."

It seems, from the testimony, that the tenant Andrews told McLain, before he rented from Smith, that such arrangement was under contemplation between Smith and Andrews.

Suffice it to say that, under the evidence, McLain made no effort whatever, and did nothing toward complying with this contract after the notice of forfeiture was served upon him. It is apparent from these facts, thus roughly stated, that this attempted forfeiture was of no validity, because Smith was not in a position to perform a contract with McLain at the time he attempted this forfeiture. We have held that, before vendor is entitled to declare a forfeiture of the contract, he must at least be in a position himself to perform. *Watland v. Quaintance*, 186 Iowa 1271.

The defendant in his pleadings asks a reformation of the contract, by adding certain omitted provisions providing that the possession of the land and the furnishing of the abstracts were to be on the 1st day of March, 1920; and the court granted

this reformation. We do not deem this matter of any importance, because, under a fair construction, the original contract provided for these identical things, and it did not need reformation.

It is the claim of the plaintiff that the defendant breached his contract and rescinded the same; and he further claims that, under the telegram from McLain to Smith heretofore referred to, under date of January 23, 1920, and the answer of Smith to the Pomona bank, of January 29, 1920, Smith agreed thereby to deposit a deed for the land with the Ames bank, to be held by the bank with the mortgage from McLain to Smith until March 1, 1921, and that Smith breached his contract by failing to make or deposit this deed with the Ames bank, as therein provided. He further claims that Smith, by making the written contract or lease with the tenant Andrews, in the latter part of 1921, put it out of his power to perform said contract. It appears that, in February, 1922, defendant had made out a written release, which he forwarded to Ames, with the request that McLain sign the same, releasing all of his rights and surrendering the farm on account of his inability to perform. McLain refused to do this, the appellee's claim being that the acts and conduct of the appellant amounted to a rescission of the contract. Appellant's claim is that the contract was not rescinded, and he says that, if there was any rescission, it was wholly on the part of the appellee; and appellant tenders full, complete, and unqualified performance.

Most, if not all, of the facts above set out are conceded, or satisfactorily proved. As late as February 24, 1922, Smith was requesting McLain to release his (McLain's) rights under the contract, and McLain was then refusing to so release, and demanded back the payments already made by him. This seems to be the last transaction that took place between these parties, except the forfeiture proceedings and the notice from McLain to Smith demanding the return of the amount paid, which were followed by the commencement of this action, on the 22d day of April, 1922.

The appellee lays great stress on the fact that Smith had not made a deed and deposited it with the Ames bank, in accordance with the letter written by the Pomona bank herein-

before referred to. While, of course, Smith will be bound by whatever the Pomona bank wrote, at the same time, Smith's testimony shows as a fact that he knew nothing about placing the deed in escrow with the Ames bank. More than this, the fact that the deed was not deposited in escrow would in no way injure or benefit the appellee. Further, if the paragraph in the letter with reference to the deposit of the deed and mortgage in escrow could be considered as rising to the dignity of a contract, the appellee is not in a position to complain, because he did not make or put up with the Ames bank the mortgage that he was to make under such contract; so he is not in a position to avail himself of this failure on the part of Smith.

It is the claim of appellee that at no time from June 20, 1919, to the time of the commencement of this suit, was the appellant ever in a position to perform this contract. It is true that at no time during the same time was the appellee in this case ever in a position to perform or carry out his part of the contract. To sum it up, appellee's cause of action is based upon what he claims to be a breach of contract and rescission on the part of the appellant, and that he, McLain, acquiesced therein; and therefore, that, under the conditions recited herein, plaintiff is entitled to recover the money paid by him on the contract.

The question is whether or not Smith, circumstanced as he was, and McLain, circumstanced as he was, could, either of them, under such conditions, put the other in default. We conclude that appellant, not being in a position to perform himself, could not put appellee in default. It is equally true that appellee, not being in a position to perform his part of the contract, could do nothing that would put appellant in default. Therefore, this contract, at the time of the commencement of this action, seems to be still a valid and binding contract between them, and neither could sue the other under such contract until one put the other in default. Moreover, the appellant, Smith, could not rescind the contract, because he was not in a position to perform his part of the agreement at the time. *McWhirter v. Crawford,* 104 Iowa 550; *Auxier v. Taylor,* 102 Iowa 673; 39 Cyc. 1375.

It is contended, however, by McLain that what appellant did amounted to a rescission of the contract by appellant, and

that appellee acquiesced therein, thereby creating what the law
recognizes as a mutual rescission. This necessarily depends on
the testimony in the case.

It is admitted that, in the fall of 1921, while McLain was
in possession of the land, through his tenant, Andrews, Smith
made a written lease with the tenant Andrews for the year com-
mencing March 1, 1922; and that Andrews con-
tinued to occupy the place, and was so in pos-
session of said land under the lease with Smith
after March 1, 1922, and up to the commence-
ment of this action; and that McLain had
nothing whatever to do with the possession of
said property after March 1, 1922. It is claimed that this tak-
ing possession of the land through the making of the lease with
the tenant Andrews, who occupied after March 1, 1922, amounts
to a rescission of the contract on the part of appellant.

2. VENDOR AND
PURCHASER:
rescission of
contract: mu-
tual rescission
by both default-
ing parties: re-
covery of con-
sideration.

In a general way, this court has recognized such a doctrine
in the following cases: *Waters v. Pearson,* 163 Iowa 391, *Mar-
tin v. Roberts,* 127 Iowa 218, and cases therein cited.

It is a settled rule in this state that, regardless of whether
or not the parties to a contract are in a position to perform, and
regardless of whether or not they are, either or both of them,
in default, yet they can, by mutual agreement, rescind the con-
tract; and if they do so without any understanding as to the
return of the purchase money paid, then, in order to complete
the rescission and establish the status quo, the vendee is entitled
to the return to him of what he paid on the purchase price, less
the value of the use of the property during the time he occupied
it. *Pedley v. Freemen,* 132 Iowa 356; *Pardoe v. Jones,* 161 Iowa
426; *Miller v. McConnell,* 179 Iowa 377; *Mortensen v. Fred-
erickson Bros.,* 190 Iowa 832, and cases therein cited.

Underlying this line of cases, however, is the well known
doctrine that, in order to make this kind of contract of rescis-
sion, as well as any other kind of a contract, there must be a
mutual meeting of the minds of the parties at the same time on
the same subject-matter.

Under the terms of this contract, it is provided, among
other things, that, if the vendee fails to make the payments, in
accordance with the terms of the contract, the contract is to be

null and void, and the vendee will have no further right in the property.

Under the testimony in the case, appellant testified that he understood from his contract that, when the vendee failed to make the payments, that ended the contract. It is true that, in one place in his testimony, he says that by his acts he intended to end the contract; but he specifically denies that he ever, at any time, had any intention of rescinding the contract. The burden of proof is on the plaintiff in this case on this question to show that there was an intention on the part of Smith to rescind said contract by what he did; and we feel that the plaintiff has not sustained this burden of proof, as the law requires that the proof of rescission of a written contract by parol testimony must be such as to be clear and convincing, and satisfy the mind that a rescission was the intent in the minds of the parties. *Mortensen v. Frederickson Bros.,* supra.

While ordinarily the retaking of possession of the property would be considered by law as an act of rescission on the part of the vendor, we do not feel that that rule is applicable here. Some light is thrown on this subject by the cases of *Mohler v. Guest Piano Co.,* 186 Iowa 161; *Richards v. Hellen,* 153 Iowa 66; *Mortensen v. Frederickson Bros.,* supra. Smith was more than patient with McLain through all this transaction, and it is apparent that he labored under the mistaken idea that, under the wording of the written contract, it was self-forfeiting on the failure of McLain to perform; and it is no more than natural that, with such an idea in his mind, as a good husbandman, he would attempt, at least, to have the farm occupied. More than this, it was to the best interests of both parties that the farm should be cultivated; and it would have been little less than foolhardy to let the land lie idle, in view of the fact that strict compliance with the contract had been waived by both parties, and that, in final adjustment between these parties, the right to the land would be an element to be considered, regardless of which of the parties rented the land. We therefore feel that, under the peculiar facts and circumstances in this case, the act of McLain in leasing the property to Andrews, the tenant, should not be considered as a controlling factor in

3. VENDOR AND PURCHASER: rescission of contract: vendor repossessing himself of land.

reaching a conclusion in this case. See *Culbertson v. Smith*, 193 Iowa 436, at 442.

The fact that vendor gave notice of forfeiture herein cannot be looked upon or treated as an act of rescission, or any declaration or election to rescind; as there is a wide difference 4. VENDOR AND between forfeiture and rescission. In *Todd v.*
PURCHASER: *Collier*, 53 Ind. 122, and *Morris v. Derr*, 55
remedies of ven-
dor: rescission Kans. 569, it is held that the retaking of pos-
and forfeiture
contrasted. session of real estate on default of payment is not a rescission. Of similar effect is *O'Brien v. Illinois Surety Co.*, 121 C. C. A. 546 (203 Fed. 436, at 440).

As we view this case, neither party, under the conditions, was in a position to bring action against the other at the time this suit was commenced. To summarize, if the recalling of the papers by Smith from the bank, in August, was an effort on his part to effect a rescission, it was not completed, because there is no showing that McLain acquiesced therein. Smith recognized this when he had his attorney write a letter inclosing a purported release of McLain's interest in the property; and McLain's refusal to sign said release amounts to a declaration on his part that he would not submit to rescission. The notice and declaration of forfeiture following is a further recognition on the part of Smith that McLain had an interest in the property, which he was desirous of destroying by said forfeiture. After this notice of forfeiture was served, McLain could not, in our opinion, by his conduct acquiesce in the futile attempt that Smith had formerly made to rescind the contract.

This case being viewed from its four corners, the equities are surely with the defendant, and the case is reversed.—*Reversed.*